UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PETER M. DEPUE,**

      **Plaintiff,**                                **CIVIL ACTION NO. 13-CV-14369**

      **vs.**                                       **DISTRICT JUDGE ROBERT H. CLELAND**

                                                    **MAGISTRATE JUDGE MONA K. MAJZOUB**

**UAW-GM LEGAL SERVICES**

      **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Peter DePue brings this *pro se* action alleging that Defendant UAW-GM Legal Services is in breach of contract regarding its requirement to provide legal services under a Collective Bargaining Agreement between the UAW and General Motors Corporation.[1] (Docket no. 1.) Plaintiff alleges that Defendant improperly refused to provide legal assistance with regard to three legal claims in 1989, 2006, and 2013. (*Id.*) Thus, Plaintiff asserts that he is entitled to $1,000,000.00 in damages. (*Id.*) Before the Court is Defendant's Motion to Dismiss and for Summary Judgment. (Docket no. 10.) Plaintiff has not filed a Response. All pretrial matters have been referred to the undersigned for consideration. (Docket no. 11.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this report and recommendation.

**I.    Recommendation**

---

[1]As discussed further herein, although Plaintiff brings his claim for breach of contract, Defendant is a retirement welfare benefit plan governed by the Employee Retirement Income Security Act of 1794 (ERISA), 29 U.S.C. § 1001 et seq.

For the reasons that follow, the undersigned recommends granting Defendant's Motion to Dismiss and for Summary Judgment [10]. Therefore, the Court recommends dismissing this matter in its entirety.

## II.     Report

### A.     Facts[2]

Plaintiff is a General Motors retiree and is a participant in the UAW-GM Legal Services Plan (the Plan), a provision of the UAW-GM CBA, which provides participants with legal services. (*See* docket no. 10 at 7-8.) In 1989, Plaintiff approached Defendant seeking representation in a matter in Clinton County. Plaintiff does not provide the details of this matter in his Complaint, and Defendant has no record of the case. (*See* docket no. 1; docket no. 10 at 8.) Plaintiff alleges, though, that Defendant "told [him he would] never win the case," but he ultimately "won the case in the parking lot of the court on [his] own." (Docket no. 1 at 1-2.)

Plaintiff again approached Defendant in 2006 for help with a matter in Ionia County. (Docket no. 1 at 2.) This claim arose out of a business dispute between Plaintiff and his daughter. (*See* docket no. 10 at 8.) Included in the claim, however, was a dispute surrounding real property that Plaintiff deeded to his daughter in 2002. (*Id.*) Plaintiff asserts that Defendant "claimed [the Plan] did not handle that type of case and referred [him] to other attorneys [who also] refused to take [his] case." (Docket no. 1 at 2.) Defendant noted that the business-related claims were specifically excluded from Plan coverage, but the real-property dispute was covered; thus, Defendant referred

---

[2]Plaintiff's Complaint is devoid of any factual background related to the underlying claims for which he sought Defendant's help. (*See* docket no. 1.) Thus, the factual background contained herein is largely derived from the affidavits attached to Defendant's Motion. (Docket nos. 10-1, 10-2, 10-3, and 10-4.)

Plaintiff to three attorneys who could handle both claims, "with the Plan paying for a cooperating attorney to handle the real estate aspects of the case, leaving [Plaintiff] responsible for paying the attorney to handle the business aspects of the case." (Docket no. 10 at 8-9.) Defendant acknowledges that the first two attorneys to which Plaintiff was referred rejected his case, but Defendant's file shows that Plaintiff did not contact it with any issues regarding the third referral. (*Id.* at 9.) Defendant closed its file on the 2006 matter in June 2006. (*Id.*)

Plaintiff approached Defendant a third time, in February 2013, to request assistance with a case in small-claims court. (*See* docket no. 10 at 9.) Plaintiff originally filed this claim on his own, claiming that he sold a van to Ms. Brandi Pennoni, whom Plaintiff asserted had agreed to pay him for the van in installment payments. When Ms. Pennoni failed to pay as agreed, Plaintiff filed his claim for the balance owed plus an amount that he had paid to fix the van. (*Id.*) Plaintiff also sued Ms. Pennoni for losses incurred due to damage of his washing machine. (*Id.*) Plaintiff alleges that Defendant told him he "didn't have a case, [but he] proceeded with the case on [his] own and won." (Docket no. 1 at 2.) Plaintiff alleges, however, that he "did not get all [that he] had requested, [and] if [he] would of (sic) been legally represented [he] may have won all [he] asked." (*Id.*)

Defendant's records show that when Plaintiff initially approached it about his claims against Ms. Pennoni, Defendant informed Plaintiff that his claims were not supported under Michigan law because he had sold the vehicle to Ms. Pennoni without transferring title at the time of sale, which Defendant informed Plaintiff was a misdemeanor under Michigan law. (*See* docket no. 10 at 10.) Defendant also advised Plaintiff that he should continue his claims against Ms. Pennoni with regard to the washing machine damage in small claims court but that such claims were below the $700 minimum-damage threshold for the Plan. (*Id.*) Plaintiff continued the case on his own and secured

3

a default judgment against Ms. Pennoni in the amount of $1,194.09. (*Id.* at 11.)

When Defendant initially told Plaintiff that it could not assist him with the 2013 matter, Plaintiff was told that he could appeal Defendant's decision by giving notice to the Plan's Assistant Director. (*Id.* at 10.) Plaintiff did not appeal Defendant's decision and, instead, requested that Defendant return the documents that he had provided. (*Id.* at 11.) On September 18, 2013, Plaintiff met with the Plan's Assistant Director and said that he would only appeal if the Administrative Committee met the next morning to consider his claims. (*Id.*) Defendant notes that its Administrative Committee only meets quarterly. (*Id.*)

### B. Standards of Review

#### 1. Motion for Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or

address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### 2. Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the

assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Additionally, "[*p*]*ro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (emphasis removed, citation omitted).

**C. Analysis**

**1. Plaintiff's claims are governed by ERISA**

In relevant part, the preemption provision of ERISA states that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29

U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). This is true "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* Moreover, the U.S. Supreme Court has recognized that ERISA's scope of preemption is extremely broad. *Id.*; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). And the U.S. Court of Appeals for the Sixth Circuit has held that "Congress intended ERISA to have the broadest possible preemptive effect." *Lion's Volunteer Blind Indus., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 807 (6th Cir. 1999). Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Haviland v. Metro. Life Ins. Co.*, 876 F.Supp.2d 946, 955 (E.D. Mich. 2012) (quotations omitted).

Here, Plaintiff's sole claim is that Defendant failed to provide benefits owed to him under his employee benefit plain; that is, Plaintiff claims that Defendant breached its agreement to provide him with legal services under the Plan. Therefore, Plaintiff's breach of contract claim relates to his employee benefit plan, and his claims are preempted by ERISA.

### 2. Plaintiff has failed to exhaust his administrative remedies

It is well recognized that a plaintiff must exhaust his administrative remedies before commencing an ERISA action in federal court. *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991) (citation omitted). This is true even where the pension plan at issue uses permissive language in its administrative review provision. *Id.* at 454 (citing *Mason v. Cont'l Grp., Inc.*, 763 F.2d 1219, 1226 (11th Cir. 1985) (the use of permissive language, such as the word "may," in the administrative review provision does not mean the plan participant is free to proceed directly to

7

federal court and avoid the exhaustion requirement)). "Exhaustion is 'routinely enforce[d]' where the plaintiff claims that his benefits were improperly calculated under the terms of a plan." *Zappley v. Stride Rite Corp.*, No. 09-cv-198, 2010 WL 2735668, at *3 (W.D. Mich. July 9, 2010) (citing *Durand v. Hanover Ins. Grp., Inc.*, 560 F.3d 436, 439 (6th Cir. 2009)). This is so because "ERISA plans are often complicated things, and the question whether a plan's methodology was properly applied in a particular case is usually one best left to the plan administrator in the first instance." *Durand*, 560 F.3d at 439.

Defendant notes that the administrative remedies available to Plaintiff are set out in the Plan Description as follows:

> Any Participant who for any reason is dissatisfied with any action or inaction of a Staff Attorney or Cooperating Attorney in connection with the Plan has a right to complain in writing to the appropriate Assistant Director.  That Assistant Director shall within 30 days prepare a proposed written decision and forward it, with the complaint, to the Director for approval or revision.  The Director shall, within 20 days, furnish the Participant with a copy of his written decision.  A Participant who is dissatisfied with the Director's decision may appeal to the Administrative Committee within 30 days of the date of the decision.  Appeals shall be in writing and shall specify the reason claimed to justify a reversal or modification of the Director's decision.  Initially, the Committee shall review the merits of any appeal if a majority of the Committee members vote to do so.  The Committee may, however, by majority vote, adopt procedures governing the handling and types of appeals that it will review.  If the Committee chooses not to review an appeal, the decision of the Director shall be final and binding on all parties, and the Director shall so notify the Participant in writing.  If the Committee decides an appeal, the Director shall give the Participant written notice of the Committee's decision, which shall be final and binding on all parties.

(Docket no. 10-6 at 15.)  Despite having access to the Plan Description and being told that he had a right to appeal the Defendant's decision in writing to the Assistant Director, Plaintiff did not appeal any of Defendant's decisions.  To the contrary, he proceeded with his legal matters on his own.  Therefore, Plaintiff's claims should be dismissed for failure to exhaust his administrative

remedies.

### 3. Plaintiff's claims arising out of his 1989 and 2006 requests are time barred

"Although ERISA does not provide a statute of limitations for benefits claims, the Sixth Circuit has recognized that such claims are governed by the most analogous state statute of limitations, which is that for breach of contract." *Santino v. Provident Life and Acc. Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2011). The Michigan breach-of-contract statute of limitations is six years. M.C.L. § 600.5807(8). Thus, Defendant contends, Plaintiff's claims arising out of events that occurred in 1989 and 2006 are time barred. Defendant is correct.

Plaintiff was required to bring his claims arising out of his 1989 request for services no later than 1995, and he was required to bring his claims arising out of his September 2006 request for services no later than September 2012. Plaintiff did not bring his claims until October 2013. Therefore, even if Plaintiff's claims are not dismissed for his failure to exhaust his administrative remedies, his claims arising out of his 1989 and 2006 requests for services are time barred.

### 4. Defendant's determinations were not arbitrary and capricious[3]

Where an ERISA plan gives the plan administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the plan administrator's decision to grant or deny benefits is subject to an 'arbitrary and capricious' standard of review. *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). A plan administrator's decision on eligibility of benefits is not arbitrary and capricious "if they are 'rational in light of the plan's provisions.'" *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)(quoting

---

[3]The undersigned will only address Plaintiff's claims arising out of his 2013 request for services because all prior claims are time barred.

9

*Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991)). When applying this standard, the court should take "into account the entire record before the administrator at the time of the determination that [the plaintiff] was not entitled [to the requested benefits]." *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir. 1988). In determining plan eligibility, the plan administrator must adhere to the plain meaning of its language and a decision relating to benefit eligibility must be based on a reasonable interpretation of the plan. *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926 (6th Cir. 2000). Simply stated, a plan administrator's determination of eligibility must be "rational in light of the Plan's provisions." *Brooks v. General Motors Corp.*, 203 F. Supp. 2d 818 (E.D. Mich. 2002).

Defendant first argues that Plaintiff's claim should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff alleges no facts that would suggest Defendant's decision not to represent Plaintiff in his 2013 case was arbitrary and capricious. Plaintiff alleges that Defendant told him he "didn't have a case" and that he went on to win the case on his own. (Docket no. 1. at 2.) While the Court can infer from these facts that Defendant's determination may have been incorrect, it does not follow that Defendant's determination was arbitrary and capricious. The Court need not determine whether such an inference creates a plausible claim for relief, though, because Defendant's argument for Summary Judgment under Fed. R. Civ. P. 56 is dispositive. That is, Defendant asserts that the Court should grant its Motion for Summary Judgment because regardless of whether he ultimately won in small-claims court, Plaintiff's case against Ms. Pennoni lacked legal merit, and therefore, Defendant's decision was not arbitrary and capricious. (Docket no. 10 at 15-18.)

Defendant's records and Plaintiff's court filings show that Plaintiff's claims against Ms.

10

Pennoni arose out of an agreement whereby Ms. Pennoni agreed to purchase Plaintiff's 1999 Chevrolet van for $2,300 through a 23-month installment contract. (*See* docket no. 10-9 at 4-5.) Ms. Pennoni also agreed to pay $60.00 per month for insurance and $10.00 per month for the license plate. (*Id.*) Thus, title and insurance for the vehicle would remain in Plaintiff's name while Ms. Pennoni drove the vehicle and made payments. (*Id.*)

As Defendant sets forth (and as Defendant discussed with Plaintiff in 2013), under Michigan law, failure to transfer title to a vehicle purchaser at the time of sale is a misdemeanor and also "renders the transaction void." (Docket no. 10 at 17 (citing Mich. Comp. Laws § 257.239; *Whitecraft v. Wolfe*, 148 Mich. App. 40, 50, 384 N.W.2d 400, 404-05 (1985)).) Thus, Defendant argues, declining to take on Plaintiff's case was rational. Moreover, Defendant points out that under Michigan Rule of Professional Conduct 3.3, if Defendant had accepted Plaintiff's case, Defendant would have been required to disclose the controlling legal authority to the court, which would not only have undermined Plaintiff's case, it could have resulted in a judgment against him for the payments that Ms. Pennoni had already made under their agreement. (*Id.* (citing M.R.P.C. 3.3(a)(2)).) The undersigned agrees. While Plaintiff may believe that the judgment he obtained in the matter supports his claim against Defendant, in fact it does not. Because controlling Michigan authority did not support Plaintiff's claims, Defendant's decision to decline representation was not arbitrary and capricious. Therefore, Defendant's Motion for Summary Judgment should be granted as to Plaintiff's claims arising from the 2013 matter.

### 5. **Plaintiff suffered no compensable damages**

Defendant also argues that even if Plaintiff's claims survive dismissal and summary judgment on procedural grounds and on the substantive merits of the claims, Plaintiff has suffered

no damages. (Docket no. 10 at 19-22.) Defendant first argues that Plaintiff's damages are speculative. Plaintiff originally sought $3,240.00 in damages against Ms. Pennoni. (Docket no. 10-9 at 2.) He obtained a default judgment against Ms. Pennoni for $1,194.09, and he asserts that "if [he] had been legally represented [he] *may* have won all [he] had asked." (Docket no. 10-9 at 14; docket no. 1 at 2 (emphasis added).) Defendant relies on *Bell Atlantic Corp. v. Twombly* for the proposition that this "speculative basis for an element of the claim is defective." (Docket no. 10 at 20 (citing *Bell Atlantic Corp.*, 550 U.S. at 557).) As noted, however, *pro se* pleadings are to be liberally construed; thus, the Court should not grant Defendant's Motion on this basis.

Defendant also argues, however, that although Plaintiff claims that the award he received was less than the award he sought, the award he actually received was more than he was entitled to under Michigan law. Therefore, Defendant asserts, Plaintiff suffered no damages. (Docket no. 10 at 20.) The undersigned agrees. For the reasons discussed *supra* at Section II.C.4, Plaintiff was not entitled to any relief under Michigan law. Moreover, though, even if Plaintiff's contract with Ms. Pennoni were not void, Plaintiff would not have been entitled to recovery because Article 9 of the Uniform Commercial Code would have required him to either sell the van in a commercially reasonable manner or accept it back from Ms. Pennoni in full satisfaction of the debt. (*Id.* (citing Mich Comp. Laws §§ 440.9610, 440.9620).) Thus, as Defendant notes, it appears that the court "handle[d] [Plaintiff's case] as it handles *pro se* small claims cases, looking for a just conclusion." The court awarded Plaintiff $1,194.09, and while Plaintiff believes that he could have received a greater award if Defendant had represented him, all of the evidence and legal authority points to the opposite conclusion: had Plaintiff been represented by an attorney with knowledge of Michigan law, he likely would have recovered less, if anything at all.

12

### D.     Conclusion

For the above-stated reasons, the undersigned recommends granting Defendant's Motion to Dismiss and for Summary Judgment [10].  Therefore, the Court recommends dismissing this matter in its entirety.

## III.     Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: July 10, 2014                                s/ Mona K. Majzoub                             
                                                                MONA K. MAJZOUB

UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

  I hereby certify that a copy of this Report and Recommendation was served upon Peter DePue and Counsel of Record on this date.

Dated: July 10, 2014         s/ Lisa C. Bartlett
                Case Manager